## MAGNOLIA PETROLEUM CO. v. MUEHL.
### (No. 6676.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 18, 1922.)

**1. Evidence &#9286;256—Evidence held not to show agent signed shortage invoice under duress.**

In an action by a sales agent for commissions, where the principal claimed a shortage in his accounts exceeding the amount of the commissions, evidence *held* insufficient to show that an invoice signed by the agent for the amount claimed as shortage was signed under duress of a threat to prosecute.

**2. Evidence &#9286;591—Testimony elicited by cross-examination construed most strongly against examiner.**

In an action for an agent's commissions, where the agent's testimony that an invoice for the shortage claimed by his principal was secured from him by duress was first elicited by defendant's cross-examination, such testimony will be construed most strongly against defendant.

Appeal from Guadalupe County Court; J. B. Williams, Judge.

Action by Alfred Muehl against the Magnolia Petroleum Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

W. H. Francis and A. S. Hardwicke, both of Dallas, and Wurzbach, Wirtz & Weinert, of Seguin, for appellant.

E. Schweppe, Jas. Greenwood, and H. E. Short, all of Seguin, for appellee.

SMITH, J. From October 22, 1918, to February 10, 1921, Alfred Muehl was the agent at Seguin of the Magnolia Petroleum Company under the terms of written con-

&#9286;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tracts. The company was engaged in the sale of petroleum products which were shipped from time to time to Muehl, and by him sold on commission through a filling station to the public. Periodically Muehl rendered statements to the company, showing amount of products sold and amount on hand. On December 30, 1920, according to the company's records, Muehl appeared to be short in the amount of products on hand, to cover which shortage the latter executed an invoice, the effect of which was to admit the existence of the shortage and the amount thereof as finally agreed upon and expressed in the invoice. On February 7th following another shortage was ascertained and settled in like manner, it being agreed between the parties that these shortages should be charged against Muehl's commissions earned in the business as provided in the contract between the parties. On February 10th Muehl was relieved of the agency, at which time it seems undisputed that the amount of his alleged shortage exceeded the amount of the earned and unpaid commissions due him from the company. Subsequently he filed this suit against the company to recover these commissions and obtained judgment for the amount thereof without regard to the alleged shortages, which the jury found did not exist.

[1] In his pleadings Muehl contended that he executed the first shortage invoice under duress, due to threats of criminal prosecution, and that there was in fact no shortage in his accounts. These two issues were submitted to the jury, who found for him on both of them. Notwithstanding the burden of proof rested upon him to prove the facts showing that he signed the invoices under duress, Muehl persistently evaded answering affirmatively the question whether or not he was threatened with prosecution, whereas upon at least one occasion he answered the question directly in the negative as follows:

"Q. When they got you to sign, did they make any threats of sending you to the penitentiary? A. No, sir."

It is also true that Muehl evaded questions designed to elicit definitely whether or not he executed the invoices on account of any fear of the alleged threats of prosecution, and there was a total failure to make that required showing. He admitted that according to his reports and the company's checks thereon the shortages existed, but contended that he executed the invoices only because he had no way of disproving the shortages. It was conceded that the company's products were in his exclusive possession and control, and that under his contract he was responsible for them, and for any losses occurring to them. He testified that these products were subject to evapor-

ation and leakage, but made no pretense of showing to what extent the evaporation or leakage accounted for the undisputed shortage, and repeatedly admitted that losses occurring in that way could not have accounted for the total shortage. It was undisputed, too, that when he executed the discrepancy invoices he questioned the correctness of the ascertained shortages, which were then reduced so as to make a substantial allowance for leakage and evaporation, before he signed up.

[2] The record shows that in his direct testimony Muehl made no reference to the question of duress, not even remotely mentioning the subject. The question was first raised on cross-examination by the company, which elicited practically all the testimony adduced upon that point. For that reason we have construed that testimony most strongly against appellant, but, when that is done, it still leaves appellee without a case.

The judgment will be reversed, and the cause remanded.